

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00339-CV

_____

IN THE INTEREST OF H.Y., A CHILD

On Appeal from the 442nd District Court
Denton County, Texas
Trial Court No. 20-8520-442

Before Bassel, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

This is an ultra-accelerated appeal[1] in which Appellant S.R. (Mother) appeals the termination of her parental rights to her son H.Y. (Harry),[2] who was removed at birth after Mother and Harry tested positive for amphetamines on urine drug screens. The trial court terminated Mother's parental rights after finding by clear and convincing evidence that Mother had met the predicate grounds found in Texas Family Code Section 161.001(b)(1)(F), (M), (N), and (O) and that termination was in Harry's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(F), (M), (N), (O), (2).[3]

Mother contends that the finding on predicate ground (M), which involves a prior termination of parental rights due to endangerment, is based on the fact that her parental rights to her older son C.Y. (Calvin) were terminated on predicate ground (E) for engaging in conduct or knowingly placing Calvin with persons who had engaged in conduct that had endangered Calvin's physical or emotional well-being. In appeal number 02-21-00261-CV—a separate appeal that involved the termination of Mother's parental rights to Calvin and that was pending at the time Mother filed her

---

[1]*See* Tex. R. Jud. Admin. 6.2(a) (requiring appellate court to dispose of an appeal from a judgment terminating parental rights, so far as reasonably possible, within 180 days after the notice of appeal is filed).

[2]We use an alias to refer to the child and his brother. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

[3]The trial court also terminated Father's parental rights based on his affidavit of voluntary relinquishment. Father did not appeal.

brief in this appeal—Mother raised a single issue arguing that the evidence was insufficient to support the finding on predicate ground (E), but we did not agree and affirmed the termination on that ground. *See In re C.Y.*, No. 02-21-00261-CV, 2022 WL 500028, at *1, *8 (Tex. App.—Fort Worth Feb. 18, 2022, no pet. h.) (mem. op.).

In a single issue in this appeal, Mother argues that the termination order must be reversed solely with respect to predicate ground (M) if the termination of her parental rights on predicate ground (E) was reversed in appeal number 02-21-00261-CV. Because we did not reverse the termination order in appeal number 02-21-00261-CV on predicate ground (E), we do not reverse the termination order here on predicate ground (M). Because Mother does not challenge any of the other predicate grounds for termination, we affirm the trial court's termination order.

## II. Background

The Department received a referral from the hospital upon Harry's birth in October 2020. The referral alleged neglectful supervision and physical abuse due to Harry's being born under suspicions of drug use. The hospital records reflect that Mother's and Harry's urine drug screens were positive for amphetamines and that Mother stated that she had used "10 units of IV meth" per day.

### A.     The Investigation and the Removal

Joycelynn Bishop, a Child Protective Services investigator, testified that she made contact with Mother at the hospital. Mother was very upset and was yelling that CPS did not have the right to be there. Bishop told Mother that the Department of

3

Family and Protective Services was concerned about methamphetamine use, and Mother admitted a history of methamphetamine use, including while pregnant with Harry. Mother said that she had been using three to four grams of methamphetamine every day but had reduced her daily usage to 1/10 gram.

Upon Harry's discharge from the hospital, CPS placed him in foster care.

### B.      Testimony from the Initial Conservatorship Worker

Abra Piacente testified that she served as the initial conservatorship worker for this case. Piacente went over the initial service plan with Mother. Mother was ordered to complete the following services:  undergo a psychological evaluation, a psychosocial assessment, and a drug-and-alcohol assessment; attend counseling sessions, parenting classes at Loreto House, and a domestic-violence intervention program; pay child support and medical support; attend visitation; comply with requests for drug testing; and attend Alcoholics Anonymous (AA) or Narcotics Anonymous (NA) meetings five times a week. While Piacente was the conservatorship worker for the first few months of the case, Mother completed only a counseling intake and one session at Loreto House and was very inconsistent with attending visitation.

### C.      Testimony from the Conservatorship Worker who Took Over

Amy Smith, a CPS conservatorship worker, testified that she had been involved with the case since Harry was a newborn and took over the case from Piacente in January or February 2021. Smith testified that she had sporadic contact with Mother

and noted that Mother had many phone numbers throughout the case. Smith described Mother as combative (i.e., yelled, swore, and talked over Smith) when Smith attempted to speak with her about drug testing and drug usage.

Smith went over the family service plan with Mother. But by the time of the termination trial almost a year later, Mother had not done anything to address the concerns that the Department initially had when the case began regarding her drug use and lack of stability. Smith testified that Mother did not complete her services: she failed to complete the counseling sessions, the drug-and-alcohol assessment, and the parenting program; ignored requests for drug testing after the one she completed in April 2021; never provided Smith with proof that she had completed the domestic-violence intervention program; attended in person only sixteen of the forty-eight visits with Harry that she was offered, though she attended some virtual visits "here and there" during the COVID-19 pandemic; never paid the $50 monthly child support or the $25 monthly medical support for Harry; and did not provide proof that she had done an intake with MHMR or that she had attended any AA or NA meetings. Mother told Smith that she had worked at several places during the case, but Smith said that Mother had not provided any proof of employment. Smith testified that Mother had moved a lot and was frequently homeless during the case. At the time of the termination trial, Smith testified that she did not know where Mother was,[4] so

---

[4]Mother did not appear for the trial, but counsel did appear on her behalf.

Harry could not be returned to her. Smith testified that Mother had demonstrated an inability to provide Harry with a safe environment because she had continued using drugs and had not provided the Department with evidence of stable housing.

Smith testified that Mother's visits with Harry were appropriate and that she was able to attend to his needs. According to Smith, Mother had spent only sixteen hours in person with Harry over the almost year-long course of the case, and he was not bonded to Mother.

Smith observed that Harry had instead bonded with his foster mother during that time and described him as thriving and having his physical and emotional needs met. Harry's older brother Calvin[5] lived in the same foster home throughout the case and the placement was going very well.

Smith cited Mother's ongoing drug use as the Department's primary concern and justification for seeking termination of her parental rights to Harry. The Department's permanency plan was for Harry to be adopted by a nonrelative—his current foster placement.

---

[5]Smith testified that Mother's parental rights to Calvin had already been terminated at the time of the termination trial pertaining to her parental rights to Harry, and the final order of termination was admitted into evidence. The termination order shows that Mother's parental rights to Calvin were terminated based on predicate grounds (E), (F), and (O) in addition to the best-interest ground.

### D.    Testimony by the CASA Volunteer

The CASA volunteer assigned to the case testified that Harry was "doing wonderful[ly]" in his foster placement.  The CASA volunteer further testified that the home was safe and suitable and that she saw no issues with the home.

The CASA volunteer opined that it was in Harry's best interest for Mother's parental rights to be terminated because she had failed to complete her court-ordered services and because she was fairly transient and would not be able to provide safe and suitable housing for Harry.  The CASA volunteer further opined that Harry's emotional and physical needs would not be met by Mother.

### E.    Testimony by the Foster Mother

The foster mother testified that she had supervised ten virtual visits via Zoom but that the visits did not occur over ten weeks in a row because Mother had failed to join some of the video calls.  During the virtual visits, the foster mother noted that Mother was not focused or listening.  On one occasion, she was driving around town looking for someone; another time, she "walked into a situation where there was an argument," and the call cut off quickly.

The foster mother testified that she intended to adopt Harry and Calvin.

### F.    Disposition of the Case

After hearing the testimony and taking notice of "the entire contents of the [c]ourt's file," the trial court found that it was in Harry's best interest for Mother's parental rights to be terminated and made findings on predicate grounds (F), (M), (N),

and (O). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(F), (M), (N), (O), (2). Mother then perfected this appeal.

### III. Standard of Review

In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures." *In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982)).

Termination decisions must be supported by clear and convincing evidence. *See* Tex. Fam. Code Ann. §§ 161.001(b), .206(a); *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012). Due process demands this heightened standard because "[a] parental rights termination proceeding encumbers a value 'far more precious than any property right.'" *E.R.*, 385 S.W.3d at 555 (quoting *Santosky*, 455 U.S. at 758–59, 102 S. Ct. at 1397). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *E.N.C.*, 384 S.W.3d at 802.

For a trial court to terminate a parent–child relationship, the party seeking termination must establish, by clear and convincing evidence, that (1) the parent's

actions satisfy just one of the many predicate grounds that are listed in Family Code Section 161.001(b)(1), and (2) termination is in the child's best interest under Section 161.001(b)(2). Tex. Fam. Code Ann. § 161.001(b)(1), (2); *E.N.C.*, 384 S.W.3d at 803; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

## IV. The Termination Order Does Not Require Modification or Reversal

In her sole issue, Mother argues that the termination order must be reversed solely with respect to predicate ground (M) if the termination of her parental rights on ground (E) was reversed in appeal number 02-21-00261-CV. Predicate ground (M) states that parental rights may be terminated if a parent had his or her parent–child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of predicate grounds (D) or (E), which are the endangering-environment and endangering-conduct grounds, respectively. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (M). Mother has failed to show that the order terminating her parental rights needs to be modified to delete predicate ground (M); alternatively, the termination order can be upheld on other unchallenged predicate grounds.

### A. No Modification Required

Mother, believing that we would reverse the endangering-conduct ground in appeal number 02-21-00261-CV (which was the sole issue raised in that appeal), seeks to have the judgment modified in this appeal to remove predicate ground (M) from the termination order. As noted above, we did not reverse the termination order in

9

appeal number 02-21-00261-CV on predicate ground (E). *See C.Y.*, 2022 WL 500028, at *1, *8. Because the trial court had evidence before it that Mother's parental rights to Calvin had previously been terminated on predicate ground (E) for endangering conduct,[6] legally and factually sufficient evidence supports the trial court's termination finding on predicate ground (M) in this appeal. Accordingly, we rule against Mother on this ground.

## B. No Reversal Required

Alternatively, even if the Texas Supreme Court were to reverse our decision in appeal number 02-21-00261-CV, the termination order in this case would not require reversal because in addition to predicate ground (M), the trial court also found predicate grounds (F), (N), and (O)—none of which are challenged by Mother. Because, along with a best-interest finding, a finding of only one predicate ground is sufficient to support termination,[7] and because appellate courts are bound by unchallenged findings supporting termination, we overrule Mother's sole issue. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re C.G.*, No. 02-20-00087-CV, 2020 WL 4518590, at *5 (Tex. App.—Fort Worth Aug. 6, 2020, pet. denied) (mem. op.);

---

[6]Mother does not argue that the trial court did not have evidence of the judgment involving Calvin, only that the judgment was not final as it could be reversed by this court.

[7]This rule has an important qualification concerning predicate grounds (D) and (E) that does not apply here. *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019); *In re T.C.*, No. 02-19-00291-CV, 2019 WL 6606172, at *1 n.3 (Tex. App.—Fort Worth Dec. 5, 2019, pet. denied) (mem. op.).

*In re K.A.*, No. 02-19-00099-CV, 2019 WL 4309168, at \*11 & n.4 (Tex. App.—Fort Worth Sept. 12, 2019, pet. denied) (mem. op.).

## V. Conclusion

Having overruled Mother's sole issue, we affirm the trial court's order terminating Mother's parental rights to Harry.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  March 3, 2022